

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DMP:AFM
F. #2015R01725

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 30, 2023

By ECF

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Dmitry Ukrainskiy
      Criminal Docket No. 22-351 (FB)

Dear Judge Block:

  The government respectfully submits this sentencing memorandum in advance of the defendant Dmitry Ukrainskiy's sentencing hearing, which is scheduled for October 3, 2023, at 3:00 p.m. For the reasons set forth below, the government respectfully requests that the Court impose a sentence of 60 months' imprisonment, which is the statutory maximum sentence for the offense but is below the advisory United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") sentencing range before application of the statutory maximum. This sentence would be sufficient, but not greater than necessary, to achieve the goals of sentencing in this case. Moreover, while the government anticipates that the Court will award the defendant some credit for his time spent in custody awaiting extradition, the government respectfully submits that the Court should not credit all of that time, which was attributable to the defendant's commission of local offenses in the extraditing country.

  Because the expedited Presentence Investigation Report ("PSR") has not yet been issued, the government has prepared this submission in the absence of the PSR. At sentencing, the undersigned will be prepared to discuss the PSR orally.

I. Background

  A. Offense Conduct

  The defendant, Dmitry Ukrainskiy, a Russian national, is a professional money launderer who took part in a conspiracy to swindle dozens of U.S. victims by breaking into their financial accounts, hacking into their computers, and impersonating their business associates over email. Millions of dollars were stolen by this means, making their way to co-conspirators abroad and ultimately to the architects of the scheme in Russia.

The defendant's role in the conspiracy was to move the stolen funds out of the United States. He did so by accepting transfers into dozens of bank accounts that he opened in Thailand, Russia, China, Cambodia and the United Arab Emirates. In order to justify the inflow of funds to his bank accounts, the defendant supplied the banks with forged paperwork identifying supposed legitimate real estate purchases by the victims. He also showed the banks forged identity documents that supposedly belonged to the victims.

While money was sometimes fraudulently sent from victims directly to the defendant, it often passed through at least one intermediary in the United States. Such intermediaries, known as "money mules," are commonly used in fraud schemes, in order to insulate the fraudsters from the victims and create a layer of deniability for the fraudsters. Moreover, when victims in transnational fraud schemes transmit money domestically, their banks are less likely to perceive a red flag and warn them of a possible fraud than if money were to be transmitted directly to the fraudsters abroad.

The money mules were recruited using online job posting sites by an individual who used the pseudonym "Samuel Gold." Gold directed the money mules to send money to the defendant. The defendant received money from numerous money mules in the United States and, at times, funded accounts in the United States that were opened at the direction of Gold. The defendant also recruited another individual to help receive stolen funds; that individual traveled with the defendant to Dubai to help open bank accounts.

The defendant was arrested in Thailand on July 5, 2016. His digital devices contained a large amount of evidence related to the scheme, including:

- screenshots from websites of victims' banks, documenting individual transfers of hundreds of thousands of dollars apiece to the defendant from the victims' bank accounts;
- forged invoices supposedly documenting business transactions by victims of the fraud scheme – often villa purchases in Thailand or fishing trips supposedly offered by the defendant's fishing charter company;
- counterfeit passports in the names of victims of the fraud scheme. These passports used the victims' names, but bore pictures of other, unrelated individuals;
- wire transfer records documenting movements of money from victims to Samuel Gold and from Gold to the defendant; and
- copies of receipts documenting purchases that Samuel Gold had instructed money mules to make using victim funds, including an iPad and two Rolex watches worth approximately $15,000.

By analyzing the defendant's digital devices, the government identified at least $3.57 million in victim losses that the defendant was directly involved in laundering.

Also found on the defendant's computer was a handwritten note that summarized the overall scheme, documenting the transfer of funds from the "hacked account" of STL Pro (a victim company) to Ukrainskiy's account at a Thai bank. That note is shown below:



Notably, the "right parenthesis" included in the above diagram after the phrase "Your Co." corresponds in Russian online usage to a "smiley face."

B. <u>Defendant's Criminal History and Extradition</u>

The defendant has no criminal history in the United States. He was arrested in Thailand on July 5, 2016 and was charged with, and ultimately convicted of, the following Thai offenses, among others:

1) Conspiracy to commit money laundering;
2) Allowing a Thai citizen to hold a company's shares in order to conduct business through that person in Thailand;
3) Conducting a business that is not permitted for a foreign national;
4) Conspiracy to create a counterfeit title deed/document of rights; and
5) Conspiracy to use a counterfeited title deed/document of rights.

3

The defendant was sentenced in Thailand to 104 months' imprisonment, but that sentence was ultimately shortened through the Thai clemency process.

The defendant was first charged in the instant case by complaint on March 25, 2016, and the United States formally sought his extradition from Thailand on or about August 8, 2016. The defendant vigorously contested his extradition. He was ultimately extradited from Thailand to the United States on or about June 15, 2022.

With the defendant's consent, the government intends to seek from the Court, at the time of sentencing, a judicial order of removal pursuant to 8 U.S.C. § 1228(c).

II.  Applicable Law

The Supreme Court has instructed that a district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted).

Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted). Title 18, United States Code, Section 3553(a) provides, in part, that in imposing a sentence, a court shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct; [and]

(C) to protect the public from further crimes of the defendant.

Section 3553 also recognizes the need to afford the defendant opportunities for rehabilitation. See 18 U.S.C. § 3553(a)(2)(D). Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence. The sentencing court must also "remain cognizant of them throughout the sentencing process." Gall, 552 U.S. at 50 n.6.

III.  Guidelines Calculation

The government calculates the defendant's offense level as set forth below:

Base Offense Level (U.S.S.G. § 2B1.1(a)(2))                                                               6

| | | |
|---|---|---:|
| Plus: | Loss Exceeds $3.5 million (U.S.S.G. § 2B1.1(b)(1)(J)) | +18 |
| Plus: | Involved 10 or More Victims (U.S.S.G. §§ 2B1.1(b)(2)(A)(i)) | +2 |
| Plus: | Substantial Part of the Fraudulent Scheme Committed From Outside the United States and Involved Sophisticated Means (U.S.S.G. §§ 2B1.1(b)(10)) | +2 |
| Plus: | Defendant Was a Manager or Supervisor (U.S.S.G. § 3B1.1(b)) | +3 |
| Less: | Acceptance of Responsibility (U.S.S.G. § 3E1.1) | -3 |
| Total: | | 28 |

With three points off for the defendant's timely acceptance of responsibility, the total offense level is 28, which, based on a Criminal History Category of I, carries an advisory Guidelines range of 78 to 97 months' imprisonment. However, because Count Three of the indictment carries a maximum sentence of 60 months, the effective Guidelines advisory sentence is 60 months.

IV.   <u>Analysis</u>

The government respectfully submits that a sentence at the Guidelines level of 60 months is sufficient, but not greater than necessary, to achieve the goals of sentencing in this case. The Guidelines advisory sentence adequately reflects the nature and seriousness of the offense, the history and characteristics of the defendant, and the need for punishment, deterrence and protecting the public from the defendant.

Dmitry Ukrainskiy victimized Americans from half a world away. His co-conspirators stole bank account logins and passwords from individuals, businesses and universities, stealing more than $3.5 million dollars. Through a network of intermediaries, that money was funneled to the defendant, who accepted the money into a network of bank accounts and facilitated the transfers with forged invoices, deeds and passports. The defendant was an indispensable component of the fraudulent scheme; although he did not defraud the victims himself, he did the back-end work that made the scheme profitable. And he was fully aware of his co-conspirators' actions, as demonstrated by email traffic where they sent him documents relating to their victimization of U.S. individuals.

A sentence of 60 months – itself a reduction from what would otherwise be the advisory Guidelines range of 78 to 97 months – will serve to protect the U.S. public from the defendant's crimes, and will deter other offenders by sending the message that those who victimize U.S. citizens from abroad are not beyond the reach of the law.

The defense will no doubt point out that he spent a significant period of time in Thai prison prior to his extradition for the instant offense. That is accurate, and although the defendant's time spent in foreign custody is not formally credited toward any sentence this Court

5

should impose, the government agrees that it is an appropriate consideration for Your Honor pursuant to Title 18, United States Code, Section 3553(a). However, the government respectfully submits that the Court should not credit the defendant with all of the time he spent in custody awaiting extradition because nearly all of that custodial time was the result of the defendant's conviction of domestic offenses in Thailand. Moreover, it bears noting that the U.S. government began to seek the defendant's extradition shortly after the time of his arrest. The defendant's time spent in Thai custody does not reflect delays attributable to the U.S. government, but rather reflects (a) the defendant's conviction of Thai domestic offenses and (b) the defendant's decision to contest his extradition to the United States.

V.   Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence of 60 months' imprisonment.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/ Alexander Mindlin
Alexander Mindlin
Assistant U.S. Attorney
(718) 254-6433

cc:   Clerk of Court (FB) (By ECF and Email)
Sabrina Shroff, Esq. (By ECF and Email)
United States Probation Officer (By Email)